IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 OCT -8 PM 2:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

EDMUND A. FAHEY,            )
                            )
    PLAINTIFF,              )
                            )
VS.                         )   CV96-H-344-NE
                            )
RAYTHEON ENGINEERS &        )
CONSTRUCTORS, INC.,         )
                            )
    DEFENDANT.              )

ENTERED
OCT - 8 1998

MEMORANDUM OF DECISION

On June 18, 1998 a jury returned a verdict in favor of defendant on plaintiff's ADEA claim that his age was a determining factor in the decision by defendant in 1995 not to hire plaintiff. The jury, however, returned a verdict in favor of plaintiff on plaintiff's ADEA claim of retaliation, that is, his claim that his prior charge of age discrimination against his former employer, PRC, Inc., in 1993 was a determining factor in the decision by defendant Raytheon in 1995 not to hire him.[1] The jury concluded that plaintiff had established the net value of wages and other financial benefits plaintiff lost as a result of defendant's retaliatory conduct in violation of ADEA as $50,000 per year. Under orders entered June 18, 1998 and June 22, 1998 the court concluded that such financial benefits totaled $160,821.92 from April 1, 1995 through June 18, 1998. The jury also concluded plaintiff had established that defendant's conduct

---

[1] The jury rejected defendant's Mt. Healthy or mixed motive defense.

was a willful violation of ADEA so that the lost financial benefits are subject to being doubled.

Also by its June 18, 1998 order the court set an evidentiary hearing to determine what, if any, equitable relief the court should award. The order required plaintiff to file a detailed document setting forth the nature of the equitable relief he sought and required both parties to identify for the court the specific evidence (other than evidence presented at trial by either party) they intended to offer to support or to oppose the claimed equitable relief. The order also required the parties to file briefs on issues relevant to equitable relief. The evidentiary hearing took place August 13, 1998 and post-hearing supplemental briefs were filed August 28, 1998. The matter of equitable relief is now under submission based upon the evidence presented at trial, as supplemented by the evidence presented at the August 13, 1998 hearing.

Plaintiff holds a mechanical engineering degree and is a registered professional engineer. Since his graduation from college in 1962 he has held a variety of positions utilizing his engineering skills without interruption for a number of different employers until his employment ended in March of 1995, when his employment with his then employer, PRC, Inc., terminated following the expiration of its contract with NASA and its failure to be awarded a new contract by NASA. Notwithstanding plaintiff's earlier application for employment with defendant (who was awarded the new NASA contract), defendant declined to

hire him in March of 1995, and that decision was the one the jury concluded was unlawful retaliation, for which the jury awarded, in effect, $160,821.92, subject to doubling by way of liquidated damages.  Except for a two-month period of temporary employment of plaintiff by Hernandez Engineering, Inc. for transition purposes, plaintiff remained unemployed from  April 1, 1995 until the trial in June of 1998 and continued to be unemployed as of the time of the August 13, 1998 hearing.

On July 7, 1998 plaintiff filed his claim for equitable relief, consisting of instatement and a general injunction requiring defendant to comply with ADEA and provide training to management.[2]

As earlier noted, this is not a discharge case; it is a failure to hire case.  Further, plaintiff's age was not a determining factor in the employment decision.  The gravamen arises out of the fact that defendant hired to perform the work awarded under the NASA contract a number of persons who had worked with plaintiff for a number of years while they were employed with EBASCO Services, Inc. and with PRC, Inc.  Some of

---

[2]   Plaintiff also requests liquidated damages and prejudgment interest.  Liquidated damages will be awarded even though the court has very serious doubt that there was sufficient evidence to support the jury's finding of willfulness. However prejudgment interest will not be awarded. As will be discussed more fully later, plaintiff, a skilled mechanical engineer with over 30 years experience, has done nothing to acquire a job of any nature since defendant failed to hire him in March, 1995 other than sending a series of form letters responding to job positions advertised in the Huntsville times and writing between August 1995 and August 1997 thirteen letters to companies expressing an interest in employment.  <u>See</u> Plaintiff's Trial Exhibit 15.

them were familiar with the fact that plaintiff had in 1993 (three years before defendant failed to hire him) filed a charge of age discrimination against his former employer.  More importantly they were familiar with plaintiff's work ethic, his treatment of subordinates, and his problems generally getting along with fellow employees.  One of those persons hired by defendant to work on the NASA contract was Randy Reed who had been supervised by plaintiff at EBASCO and who was justified in having formed an opinion that Fahey was dishonest and unethical. Reed played an important role in defendant's hiring of the 16 persons necessary to perform the NASA contract and still plays an important role in performance of the work under the NASA contract for which plaintiff seeks instatement.

    During Reed's interview of plaintiff for employment by defendant, Reed was justified in forming an opinion that plaintiff was improperly using his ADEA charge against their former employer for leverage in obtaining a job with defendant. Plaintiff during the interview brought up the prior charge several times and expressly requested Reed to put on his report of the interview that plaintiff said he would drop his discrimination lawsuit against his former employer if defendant hired him for the NASA work.  Reed described plaintiff as a very moody person who frequently called Mexicans "wetbacks" or "spicks."[3]  Reed, who is the project manager for the NASA work

---

    [3] This is all the more surprising because plaintiff's wife is Mexican.

and under whom plaintiff would work were the court to order instatement, witnessed plaintiff while both were employees of another employer change the employee appraisal for one of plaintiff's subordinates, Terry Bobo, after Bobo had signed the appraisal and without Bobo's knowledge.

Michael Haynes, who was hired by defendant to work on the NASA contract and who was supervised by Fahey while they worked for another employer, under a threat of a poor evaluation from Fahey, had to install a radio in plaintiff's car and move a pool table for Fahey from a store to plaintiff's house on company time.  Haynes, with whom plaintiff would have to work were the court to order instatement, testified at trial that plaintiff is not worthy of trust.[4]  Haynes also recalls plaintiff calling a former fellow employee of plaintiff, Regina Nicholson, a "damn black bitch" or "a damn nigger bitch."

Teresa Durrette, also with whom plaintiff may have to work were the court to order instatement, has a more serious problem working along side plaintiff.  While they were employed by EBASCO, Fahey told Durrette that he (Fahey) and a fellow male employee (Kennedy) had rated all the females with whom they work as to whom they would most like to have sex with and that Durrette was within the top five on each list.  Durrette also remembers plaintiff telling racist jokes and using the word "nigger."  Haynes, Durrette, and Reed are among at least six

---

[4] This opinion is justified based upon the trial testimony of Haynes regarding a tool box and regarding the return of a screwdriver to Wal-Mart.

persons who are personally familiar with plaintiff from prior employment with him and who comprise over 25% of the current work force performing for defendant under the NASA contract.  Both Reed and Durrette would occupy a supervisory role over plaintiff.

The court is satisfied that antagonism and discord is so prevalent in the employment setting to which plaintiff would be instated or placed by the court that the court will exercise its discretion and not order the equitable relief of instatement.

Most of the earlier discussion is fully relevant to whether the court should award front pay in lieu of instatement which is being denied.  In considering whether to award front pay the court cannot help but focus in some measure on whose fault it is that the requisite antagonism and discord exists which necessitates even considering the issue of front pay.  The antagonism and discord rests totally at the feet of plaintiff as a result of his behavior as a co-employee and/or supervisor of over 25% of defendant's work force on the NASA contract while plaintiff and that 25% were employed by EBASCO and/or PRC, Inc.  Also, the court cannot help but be influenced by plaintiff's failure to take more than minimal steps to mitigate his damages, and this failure may reduce or eliminate entitlement to front pay.  See Dominic v. Consolidated Edison Co. of N.Y., 822 F.2d 1249, 1258 (2d Cir. 1987); McNeil v. Economics Lab., Inc., 800 F.2d 111, 118 (7th Cir. 1986), overruled on other grounds by Coston v. Plitt Theatres, Inc., 860 F.2d 834, 836 (7th Cir. 1988).

The two-month temporary work for Hernandez ended June 23, 1995. Toward the end of his direct examination at trial plaintiff's counsel asked him the following questions which he answered as set forth below:

Q. Okay. After you were not hired in March of 1995 by Raytheon, have you worked in the engineering field in the aerospace industry or otherwise since that time?

A. Since - -

Q. How long did you work for Hernandez?

A. They gave me a two-month contract to try to train Raytheon.

Q. So you worked for Hernandez until June?

A. Until the end of June, more or less.

Q. What day in June?

A. I think it was June 23rd.

Q. Since then have you been able to find work as an engineer?

A. Not in that specialty that I work in, no.

Q. Have you looked?

A. I have looked very steadily.

Q. Can you look at Exhibit 15, please, sir? Tell me if this is a stack of letters either to or from you concerning your job search? Mostly from you.

A. Yes, that's correct.

Q. These are not signed. Why is that? Do you have signed copies of these letters?

7

A.   Well, I just signed the copy that I would send out.  When I would try to get a job, I would sign the original and just keep a computer copy, an unsigned copy.

Q.   Were all of these letters actually sent?

A.   Oh, yes.

    MR. SCHELL: Judge, we offer Plaintiff's Exhibit 15.

    THE COURT: 15 is received.

Q.   Mr. Fahey, one other question.  What's the earliest date of the - - the earliest letter, the bottom one in the stack?

A.   July 2nd, 1995, which was just a few days after my job terminated.

Q.   Who was that an application to?

A.   It's an application to Raytheon.

Q.   And what is the - - did you answer an ad in the paper?

A.   Yes, they had an ad in the paper.  It was my job description in the paper.

Q.   What is the most recent letter, which I believe is about ten down.  I apologize, these were reverse order then I switched.  Let me help you.

    Is this letter to - - is this the most recent letter in the stack?

A.   Yes, I think that's the most recent.

Q.   What's the date of that?

A.   April '98.

Q.   So you have been sending letters out regularly from July of '95 to April of '98?

A.   Yes.

8

As noted earlier, plaintiff is a registered professional engineer. He resides in Madison, Alabama, a suburb of Huntsville, Alabama, where he has been employed for many years by various employers performing work for, or directly related to, space exploration and flight for NASA at the Redstone Missile Command. He has changed jobs a number of times in this work, but his job-seeking effort after defendant failed to hire him has been limited primarily to writing over a period of 37 months letters in response to advertisements for jobs in <u>The Huntsville Times</u>. There were 34 such letters, but only two of them in 1998 and only six of them in 1997. In addition, during the 37 month period, plaintiff wrote 13 letters directly to selected employers, but none of them were written in 1998 and only one of them was written in 1997. While that effort may be enough to support the award of legal damages up until the date of trial, the court is not impressed by it when considering front pay in lieu of instatement where the necessity to award front pay, as opposed to instatement, is clearly the fault of plaintiff. Thirty-seven months in the Huntsville, Alabama job market is enough time to allow an experienced mechanical engineer who has worked for years for employers performing large contract work for NASA to find employment in his chosen field if a reasonable effort is made over the 37 months. The court will not award front pay in lieu of instatement.

A separate final judgment will be entered.

DONE this ____8th____ day of October, 1998.

James H. Hancock
SENIOR UNITED STATES DISTRICT JUDGE

10